IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVILLE PORRAS, | No. C 06-6285 CW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES DAVIS, Chairman, Board of Parole Hearings, | |
| Respondent. | |

Petitioner Neville Porras, a state prisoner incarcerated at the Correctional Training Facility at Soledad, California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of determinations made by the California Board of Parole Hearings (Board) finding him unsuitable for parole.  Specifically, Petitioner claims that the Board based its decision on factors lacking an indicia of reliability, that it failed to satisfy the "some evidence" standard identified in Superintendent v. Hill, 472 U.S. 445, 455 (1985), and that it ignored the California sentencing matrix.

On March 1, 2007, the Court ordered Respondent to show cause why this petition should not be granted.  On April 30, 2007,

1 Respondent filed an answer and lodged a copy of the records of the
2 state proceedings.  Petitioner has filed a traverse.  Having
3 considered all of the papers filed by the parties, the Court DENIES
4 the petition.

## BACKGROUND

The following facts are derived from the California court of appeal's decision affirming Petitioner's second-degree murder conviction on direct appeal:

> Late in the evening of August 11 and early in the morning of August 12, 1988, the victim, Shawn Bartholomew, and his friend, Cosmo Allen Byrd, got drunk with some friends under Waterloo Bridge. The victim and Byrd went to Waterloo Liquors, where Byrd left the victim to return home. Byrd heard someone yell, "'Come here,'" as he walked away from the liquor store. He turned around and saw someone who resembled defendant running. Byrd continued home.
>
> During the same night, defendant was in his front yard drinking with his brother, Willie Lester, and Lester's friend, Mike Garcia. William "Moose" Phillips and Dennis "Scooter" Wheeler passed in front of the house and exchanged angry words with defendant. Phillips and Wheeler left, but defendant and his group armed themselves, defendant with a butcher knife, and enlisted the aid of another friend, James Azevedo. The group began searching for Phillips, but without success. All but Lester returned to defendant's front yard. Shortly after they returned, they heard yelling from the alley. The voice sounded to them like Lester's, although Lester denied later that it was he.
>
> After hearing the yell, defendant left alone to look for his brother. Eventually, defendant saw the victim and chased him down. Defendant held the victim by the hair and said, "Where's my brother, where's my brother[?]" Lester and Garcia arrived after defendant caught the victim. Lester hit the victim with a stick, and Garcia kicked the

2

> victim in the head. Defendant was the only one in the group with a knife, and he later admitted to law enforcement he stabbed the victim.
>
> The group left the victim and returned to defendant's yard. Paramedics . . . found the bloodied victim lying in the fetal position. The victim died of a stab wound which pierced his heart, liver, and right lung.

Resp't Ex. B, People v. Porras, No. C007818, slip op. at 3-4 (Cal. Super. Ct. July 18, 1991).

On October 31, 1989, a San Joaquin County jury convicted Petitioner of second-degree murder (Cal. Penal Code § 187). The trial court sentenced him to fifteen years to life in prison, with a consecutive one-year term for use of a knife (Cal. Penal Code § 12022(b)). Petitioner was received on December 1, 1989, and his life term began the same day, with 667 days of credit for time served. On direct appeal, the state court of appeal affirmed his conviction. His minimum parole eligibility date was set for June 5, 1999. Resp't Ex. E, July 12, 2005 Parole Consideration Hearing, at 1.

The Board has denied Petitioner a parole date five times.[1] Pet. at 14. His habeas petition is based on his fourth suitability hearing, on July 12, 2005, when the Board found him unsuitable for parole because he "would pose an unreasonable risk of danger to society and a threat to public safety if released from prison." Resp't Ex. E at 56. The Board issued a one-year parole denial and acknowledged that its decision was "based primarily on the

---

[1] Petitioner's fifth suitability hearing, on August 15, 2006, took place after Petitioner filed his habeas petition in state court but before he filed his federal petition.

3

1  commitment offense." Id.  Referring to Petitioner's account of the
2  murder, the Board stated that "the issue at hand has to do with
3  insight and the fact that the official version of this crime is
4  significantly different than what you put forward today." Id.

5       Specifically, the Board focused on how many times Petitioner
6  stabbed his victim.  Petitioner maintained that he stabbed his
7  victim only once, in the victim's side, in the course of mutual
8  combat, and then dropped his knife on the ground. Id. at 14-15.
9  The Board noted that the probation officer's report and witness
10 statements described a very different scenario, as follows: the
11 victim, "after perhaps being stabbed once, was chased and continued
12 to be stabbed" two more times. Id. at 57.  The Board decided it
13 needed to see the coroner's report in order to resolve the disputed
14 facts regarding the number of times the victim was stabbed.  In
15 concluding Petitioner was unsuitable for parole, the Board
16 explained:

>     So we need to know.  On the face of it that's enough as
>     an issue.  The fact that this was a bunch of kids.  It
>     could have ended up with everybody just beating each
>     other up but you killed somebody.  On paper that's
>     enough.  It's important for us to know if there were
>     indeed two stab wounds to the back of [the victim] or
>     not.  We have to know that. . . .

21 Id. at 57-58.  The Board felt that if Petitioner was lying about
22 the nature of the crime or his role in it, it would mean he lacked
23 insight and was therefore not yet ready for parole.  In its
24 decision, the Board referred repeatedly to Petitioner's lack of
25 insight, maintaining that "this issue of insight is very important
26 and it's something that we have to address.  There is just [no] way
27 that we can leave it unaddressed." Id. at 60.  If Petitioner was

4

lying, the Board concluded it was "not comfortable letting [him] go back out." Id. at 62.[2]

Beyond the insight question, the Board found that Petitioner had not participated sufficiently in self-help programming in prison. Id. at 65-66. The Board found that Petitioner had a minor history of criminal behavior, id. at 58, and an unstable social history, including a long history of alcohol abuse, id. at 23-25. The Board felt Petitioner needed to focus on anger management and alcohol abuse programming. Id. at 68-69. Petitioner represented that the prison did not allow him to participate in self-help programs because he is on C status[3] for refusing to cut his hair, a violation of the prison's grooming standards. Id. at 61. Petitioner explained that keeping his hair long is a religious decision having to do with his Native American spiritual beliefs. Id. at 45. The Board concluded that, regardless of this barrier, Petitioner could do some sort of rehabilitative work on his own, such as reading self-help books about alcohol abuse and anger management. Id. at 65, 69. The Board suggested that Petitioner verify at his next hearing that he was on C status for religious reasons, and show whether his religious activities included a

---

[2] Although the coroner's report was not before the Board at the time of the hearing, Respondent has submitted it to the Court attached to its Answer. The coroner found two other stab wounds on the victim's back that "appear[ed] contemporaneous" with the fatal stab wound and also "appeared to have been caused by a knife, or a sharp instrument." Resp't Ex. D, Coroner's Report and Autopsy. The coroner's autopsy describes the fatal stab wound to the victim's side as penetrating nine inches into the victim's body.

[3] Prisoners are placed on C status for violations of prison rules. C status prisoners have limited privileges.

1  substance abuse treatment component.

2  The Board also acknowledged Petitioner's progress.  The Board
3  examined his psychiatric reports, which described him as "genuinely
4  remorseful" for his crime, a "minimum risk threat," "no greater
5  risk of re-offending than the average citizen," and someone with "a
6  strong family support system who will serve to facilitate his
7  reintegration into society."  Id. at 34-35.

8  The Board read letters of support from Petitioner's family
9  members pledging to help him with housing and employment if the
10 Board granted him parole.  Id. at 26-28.  The Board noted that
11 Petitioner "has good family support."  Id. at 59.  The Board
12 considered a supportive letter from Petitioner's public defender,
13 who argued that a manslaughter conviction would have been more
14 appropriate in this case and that Petitioner's "conduct in prison
15 has been such that the Board can act to rectify this old injustice
16 by paroling him now that 17 years have passed. . . ."  Id. at 36.

17 The Board commended Petitioner and told him he had "done a
18 good job" so far in his progress toward rehabilitation.  Id. at 60.
19 The Board noted that he had maintained a good disciplinary record
20 in prison, earned his General Educational Development (GED)
21 credential, participated in Native American spiritual activities,
22 and taken advantage of some vocational training.  However, the
23 Board found that these positive aspects of his behavior did not
24 outweigh the factors of unsuitability, particularly the discrepancy
25 between his description of the commitment offense and the probation
26 report.  Id.

27 Looking to his future parole hearings, the Board again

28

1  encouraged Petitioner to "participate in self-help in order to
2  continue to build towards a successful parole and in order to cope
3  and understand stress in a non-destructive manner."  Id.  "You're
4  really close," the Board told him, "and you've got . . . to dot all
5  these Is and cross all these Ts and you've got to make the [next]
6  panel comfortable that you've addressed every issue and that you're
7  just absolutely coming clean with everything."  Id. at 66.

8      After his fourth parole denial, Petitioner filed a state
9  petition for a writ of habeas corpus in the San Joaquin County
10 superior court, alleging that the Board's finding of unsuitability
11 was arbitrary and capricious and unsupported by sufficient
12 evidence, in violation of his federal due process rights.  Resp't
13 Ex. F, In re Porras, No. SC043369, slip op. at 1 (Cal. Super. Ct.
14 Mar. 1, 2006).  On March 1, 2006, the superior court denied habeas
15 corpus relief, finding that the Board hearing "reveals sufficient
16 evidence to support the decision."  Id.  The court concluded there
17 was an adequate evidentiary basis for denying parole based on the
18 discrepancy between Petitioner's description of the commitment
19 offense and facts in the record reviewed by the Board, as well as
20 his minor history of criminal behavior, his unstable social
21 history, his insufficient participation in self-help programs, and
22 the fact that his rehabilitation gains were relatively recent.  Id.
23 at 2.

24     Petitioner filed state habeas petitions in the California
25 appellate court and California Supreme Court; both summarily denied
26 his petitions.  Resp't Ex. G, In re Porras, No. C052495 (Cal. Ct.
27 App. May 11, 2006); Resp't Ex. H, In re Porras, No. S143663 (Cal.

7

July 24, 2006). The last state court opinion to address the merits of Petitioner's claim is that of the superior court.

## LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies to both questions of law and to mixed questions of law and fact, id. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of"

8

Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Id.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, federal court review under § 2254(d) is of the last state court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000); Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

Although only Supreme Court law is binding on the States, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

9

DISCUSSION

I.  Due Process and "Some Evidence"

Respondent argues that California inmates do not have a federally protected liberty interest in parole release and that the Ninth Circuit's holding to the contrary in <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006), is not clearly established federal law for the purposes of AEDPA.  However, this Court is bound by Ninth Circuit authority.  <u>See</u> <u>McQuillion</u>, 306 F.3d at 901 (holding that "'clearly established federal law, as determined by the Supreme Court of the United States' provides that California prisoners . . . have a cognizable liberty interest in release on parole.").  Therefore, this argument fails.

Respondent next contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly established Supreme Court authority are limited to an opportunity to be heard and a statement of reasons for denial.  This position, however, has likewise been rejected by the Ninth Circuit.  According to the Ninth Circuit, the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary."  <u>Sass</u>, 461 F.3d at 1128 (citing <u>Hill</u>, 472 U.S. at 457).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the federal habeas court's analysis is framed by the statutes and regulations governing

10

parole suitability determinations in the relevant State.  Id. Accordingly, in California, a federal habeas court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle.  Id.

California law provides that a parole date is to be granted unless "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration. . . ."  Cal. Penal Code § 3041(b).

According to the California Penal Code, circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Cal. Penal Code § 3041(c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.; see also In re Rosenkrantz, 29 Cal. 4th 616, 683 (2002) (the commitment offense must be "particularly egregious" for parole to be denied on this basis alone), cert. denied, 538 U.S. 980 (2003).

The California Code of Regulations sets out additional factors

11

showing suitability or unsuitability for parole that the Board is required to consider. See Cal. Code Regs. tit. 15 § 2402(b). These include "[a]ll relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id. Self-help programming is not expressly listed in Cal. Code Regs. tit. 15 § 2402(b), but the Board may properly consider it when evaluating a prisoner's suitability for parole; § 2402(b) is not an exhaustive list of factors.

Circumstances tending to support a finding of parole suitability include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, no criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. Cal. Code Regs. tit. 15 § 2402(d). The California Penal Code provides that a parole board "shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed." Cal. Penal Code § 5011(b).

12

Petitioner asserts that the Board and the state courts violated his federal due process right because each of their determinations "either ignore[s] or contradict[s] the available evidence, has no basis in fact, fails to satisfy the standards of assessment dictated by governing regulatory law, illegally contradicts governing case law, or violates statutory code(s)." Pet. at 15.  These arguments fail.

Petitioner argues that the state habeas court's decision was an unreasonable application of clearly established Supreme Court precedent because it was based on unreliable evidence, and therefore did not meet the evidentiary standard established in Hill.  That standard, however, "is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ."  Hill, 472 U.S. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)) (internal quotation marks omitted).

The Board relied heavily on the discrepancies between Petitioner's version of the offense and the record of the case. Petitioner argues that the Board cannot require him to admit to a particular description of the crime as a condition of finding him suitable for parole.  As noted above, the California Penal Code provides that a parole board "shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed."  Cal. Pen. Code § 5011(b).  However, in addition to the discrepancy between Petitioner's account of the crime and the evidence in the record, the Board also based its

13

decision on Petitioner's unstable social history, his history of alcohol abuse, and his limited participation in substance abuse and anger management self-help programming.

Petitioner argued to the Board that he was unable to participate in self-help programs because he was on C status for violating prison grooming standards by keeping his hair long for religious reasons. However, as the Board noted, Petitioner's C status does not prevent him from reading books about anger management and substance abuse and undertaking independent study. Petitioner did not deny that he could undertake such independent steps toward rehabilitation, nor did he demonstrate to the Board that his participation in Native American spiritual activities provides equivalent treatment and education. Petitioner's failure to take such steps also provided some evidence for the Board to find that he was not suitable for parole.

Petitioner also argues, "There is nothing to distinguish [his] crime from other second degree murders." Pet. at 17. However, the Board was not required to "justify its decision as compared to other second degree murders" before it determined whether Petitioner remained a threat to public safety. In re Dannenberg, 34 Cal. 4th 1061, 1082-83 (2005).

In its denial of the petition, the state habeas court relied on Petitioner's minor history of criminal behavior, his unstable social history, his lack of sufficient participation in self-help programs, and the fact "that his gains were relatively recent," as well as the commitment offense and Petitioner's description of it. Thus the state court's decision met the "some evidence" requirement

14

and was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, this Court may not grant Petitioner habeas relief on this ground.

The Board's decision was not based solely on the commitment offense, or Petitioner's description of it. The state habeas court likewise recognized and relied on a number of factors in its affirmance of the Board's decision. If, in the future, the Board and state habeas court rely exclusively on Petitioner's commitment offense, that might trigger federal habeas relief under AEDPA. The Ninth Circuit has held that continuous reliance over time on static factors could violate due process. See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1129; Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003).

II. Sentencing Matrix

Petitioner claims his due process rights were violated because he is overdue for release pursuant to the Board's sentencing matrix. Petitioner argues that because his commitment offense was not especially egregious, his term should be fixed at seventeen, eighteen, or nineteen years, "less both pre and post conviction time credits; placing an expectation of release at 18 years." Pet. at 19-20. Petitioner argues that, because he had served approximately seventeen years in prison at the time of his fourth suitability hearing and, counting pre- and post-conviction credits, he had served a total of twenty-three years, he met the maximum sentence prescribed by the sentencing matrix. Pet. at 12.

Petitioner misinterprets the matrix. He is serving an indeterminate sentence under California Penal Code § 1168. When a

15

prisoner is sentenced under § 1168, the Board determines whether the prisoner is suitable for parole.  Cal. Penal Code § 3040(b). If the prisoner is found suitable, the Board will set a release date after consulting the matrix.  Cal. Code Regs. tit. 15 § 2411(a).  However, the matrix need not be consulted if the Board finds a prisoner to be unsuitable for parole.  Dannenberg, 34 Cal. 4th at 1071 (citing Cal. Penal Code § 3041).

Here, the Board found Petitioner to be unsuitable for parole. Accordingly, it was not required to consult the matrix or calculate good time credits.  Petitioner's due process claim relating to the Board's sentencing matrix is therefore DENIED.

CONCLUSION

The California state courts' denial of Petitioner's habeas claim was not contrary to, or an unreasonable application of, controlling federal law, nor was it based on an objectively unreasonable determination of facts in light of the evidence in the record.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 412-13. Accordingly, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file. The parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 8/13/08

CLAUDIA WILKEN
United States District Judge

16

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

NEVILLE PORRAS,

        Plaintiff,

v.

BOARD OF PRISON TERMS et al,

        Defendant.

Case Number: CV06-06285 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 13, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Amber Nicole Wipfler
Office of the Attorney General
Correctional Law Section
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Neville Porras E-37606
Correctional Training Facility- Central
C-238-L
P.O. Box 689
Soledad, CA 93960-0689

Dated: August 13, 2008

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

17